STONE v. N. O. PUBLIC SERVICE, INC.

———

(January 21, 1929. Opinion and Decree.)

———

Carroll & Carroll, Henry G. McCall, and A. J. Plough, of New Orleans, attorneys for plaintiff, appellee.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellant.

MAY, Judge ad hoc. This is a suit for personal injuries and property damage brought by Isaac D. Stone against the New Orleans Public Service Inc. and the Union Indemnity Company, Louisiana corporations.

Plaintiff alleges that on February 16, 1922, at about 8:30 a. m., he, the owner and operator of a riding academy in New Orleans, was proceeding up Coliseum street, riding one mare and leading two others, one on either side, the three animals proceeding abreast; that when he had reached a point on Coliseum street, a short distance below Delachaise street, he saw a street

car, the property of the first-named defendant, proceeding down Coliseum street at a very rapid speed; that he (petitioner) thereupon signaled to the motorman to warn him against proceeding so rapidly, it being clear that there was danger that the car would strike one of petitioner's horses, the street being very narrow at that point; that the motorman paid no attention to petitioner's signal, but continued on, and that, while petitioner pulled his horses over to the right as far as possible, he was unable to get out of the way, with the result that the car came into violent contact with the left lead mare, striking her with such force as to force her against the mare that petitioner was riding and to force this second mare against the third, all three animals together with petitioner being knocked down and injured.

Then follow various allegations as to conditions immediately following the accident and as to physical injuries suffered by petitioner, together with injuries inflicted upon petitioner's horses and loss suffered by petitioner by way of interference to and disarrangement of his business, together with allegations of depreciation in value of the animals subsequent to the accident, and loss incurred by petitioner in an attempt to minimize the damage inflicted upon him. Plaintiff's claims total $1,039.

The answers of defendants are the equivalent of general denials.

This case was tried by a jury who brought in a verdict for $839, upon which verdict judgment was rendered January 26, and signed February 2, 1926, in favor of plaintiff and against the New Orleans Public Service Inc., and from which judgment defendant alone has appealed.

The record is voluminous, there being six witnesses for plaintiff and six for defendant.

For the plaintiff, however, only one eyewitness was offered in addition to plaintiff himself, while for the defendant the only eyewitness produced was the conductor of the car in question.

The remainder of the evidence offered is as to conditions immediately following the accident and as to damage alleged to have been ultimately suffered.

Now as to the question of the negligence vel non of the defendant—this we will not undertake to consider, such being solely a question of fact, found by the jury, and in which finding we see no manifest error.

As to quantum, however, we feel that there is manifest error in the jury's verdict, and we therefore proceed to make what we believe the necessary corrections.

We are, of course, without knowledge as to the various items of alleged damage allowed or disallowed in whole or in part by the jury, and we will therefore consider and pass upon each item of claimed damage as presented by plaintiff.

The first claim is for $250 for personal injuries and suffering. As to this item, there is nothing in the record other than the testimony of plaintiff that he was thrown from his horse and suffered a wrenched back, which only partially incapacitated him for 4 days; that during these 4 days he came to his place of business, but that he was "practically out of the saddle" for four days.

There is no evidence that plaintiff employed a physician, or that he received any treatment whatever, or that he suffered pain, or that he was in any way inconvenienced, except as above stated. We believe, therefore, that $150 is sufficient to compensate plaintiff for such personal injury.

The next item claimed is for food and care of two injured horses during incapac-

ity—$90—such being on the basis of $1 a day for 35 days for one, and 55 days for the other. Here there is no evidence to show that any particular attention was given these injured animals by plaintiff personally, other than to feed them, and according to the testimony of plaintiff's witness, H. J. Schreiber, a grain merchant, such animals could have been fed at the time in question at a cost of from 50 to 60 cents a day. We feel therefore, that $54 is sufficient allowance for this claim.

Plaintiff's claim for "loss in receipts"— $315—is allowed.

The next claimed item is for depreciation in value of the mare "Lady"—$150. This mare was bought by plaintiff for $150 some months prior to the opening of his riding school, but he contends that he so trained her that she was, at the time of the accident, worth $250, and that, subsequent to the accident, she was only worth $100. The evidence shows, however, that this animal was only incapacitated 35 days, and that thereafter plaintiff used her in his riding school, and that it was only after he had closed his school some 1½ to 2 years later that he sold her for $75. We cannot, therefore, see that any depreciation in value has been shown as a result of the accident. This claimed item is therefore disallowed.

The next claimed item is for depreciation in value of the mare "Sister"—$225. The evidence shows that this animal was bought by plaintiff prior to the opening of his riding academy for $150; that she was incapacitated as a result of the accident for 55 days, and that thereafter plaintiff used her in his riding school until such school was discontinued in 1924 or 1925, after which time plaintiff gave the animal away because she was going blind. There is no evidence to show that approaching blindness was in any way a result of the accident in question, and we find no depreciation in value shown, and the claim for such damage is therefore disallowed.

The next and last claimed item is for loss incurred as a result of the purchase by plaintiff of a horse for $125, bought, so plaintiff says, the day following the accident, in an effort to reduce and minimize the losses resulting from such accident. Plaintiff contends that this animal was unfit for use by his academy pupils, and that it subsequently depreciated in value to $60. The evidence shows that this animal was sold for $75. However, plaintiff's claim is for the difference between the purchase price and $60 or $65, less the admitted earnings of such animal of $56, making plaintiff's claim $9.

Now, while plaintiff's statement, that he bought this horse in an effort to minimize his damage, is uncontradicted, it is equally true that there is nothing to show that the animal depreciated in value subsequent to his purchase, and, if he was only worth $75, then plaintiff paid too much for him, and we cannot see how defendant can be held for plaintiff's error in judgment, and such an alleged element of damage is, in any event, too remote for allowance.

In truth, it might well be that defendant is entitled to a credit for the earnings of this animal ($56), but there is nothing to show that such were net earnings, and we believe, therefore, that justice will be best served by simply dismissing this item from further consideration.

Under these circumstances, we believe that an award of $519 to plaintiff would be proper.

For these reasons, the judgment appealed from is amended by reducing the amount thereof to $519, and, as thus amended, it is ordered that said judgment be affirmed.